Tammy Hussin, Esq. (Bar No. 155290)
Hussin Law Firm
1302 N. Coast Highway 101, Ste 201
Encinitas, CA 92024
Tel: 877.677.5397
Fax: 877.667.5397
Tammy@HussinLaw.com

Attorney for Plaintiffs, TAMARA MORRIS, MARY RUSSELL, DESIRE VALDEZ, AND INNA BADRAN

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| TAMARA MORRIS, MARY RUSSELL, DESIRE VALDEZ, AND INNA BADRAN,<br><br>PLAINTIFFS,<br><br>V.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC, A CALIFORNIA LIMITED IABILITY COMPANY; AND DOES 1-10, INCLUSIVE,<br><br>DEFENDANTS. | CASE NO.<br><br>COMPLAINT FOR DAMAGES FOR VIOLATIONS OF TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §227, *ET SEQ.*<br><br>**JURY TRIAL DEMANDED** |

For this Complaint, the Plaintiffs, by and through their undersigned counsel, based on information garnered from Plaintiffs and investigations by their counsel, hereby state as follows:

COMPLAINT FOR DAMAGES

1. This action arises out of repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. §227, *et. seq.* ("TCPA"), and this court has original jurisdiction of this civil action as one arising under the laws of the United States. 28 U.S.C. §1331; *see, Mims v. Arrow Fin. Serv., LLC*, 565 U.S. 132 S. Ct. 740, 181 L. Ed.2d 881 (2012).

2. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

3. Plaintiffs all satisfy Article III standing requirements, as all have suffered concrete injury in the form of invasions of privacy from defendant's repeated violations of the TCPA. *See*, *Van Patten v. Vertical Fitness Group*, Case No.3:12-cv-01614 (9th Cir., 2017).

4. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), in that Defendant transacts business here and a substantial portion of the acts giving rise to this action occurred here.

**THE PARTIES**

5. Plaintiff, Inna Badran, f/k/a Inna Spivak (hereafter, "Badran"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

7. Plaintiff, Tamara Morris (hereafter "Morris"), is an adult individual residing in Bakersfield, California, and they are each a "person," as defined by 47 U.S.C. §153(39).

8. Plaintiff, Desire Valdez (hereafter, "Valdez"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

9. Plaintiff, Mary Russell (hereafter, "Russell"), is an adult individual residing in Los Angeles, California, and is a "person," as defined by 47 U.S.C. §153(39).

10. Defendant, Portfolio Recovery Associates, LLC, (hereafter, "PRA") is a California limited liability company, formed in Delaware, and authorized to do business in California, and operates regularly collecting consumer debts in this Judicial District and throughout the state of California.

11. Does 1-10 (the "Collectors") are individual collectors employed by PRA and whose identities are currently unknown to the Plaintiffs. One or more of the Collectors may be joined as parties once their identities are disclosed through discovery.

12. PRA at all times acted by through one or more of the collectors.

## BACKGROUND

13. PRA is one of the largest debt buyers in the nation, and one of the most notorious for abusing consumers while ignoring state and federal consumer protection laws. In fact, in 2015, the Consumer Finance Protection Bureau ("CFPB") filed suit against PRA, alleging a widespread practice of unfair, deceptive, and abusive debt collection activity. The CFPB alleged that PRA routinely called consumers at such an excessive and harassing rate, and that many consumers wound up paying for disputed debts solely to stop the excessive calls from PRA. PRA ultimately agreed to enter into a Consent Order with the CFPB, requiring PRA to pay over $8 million in fines and restitution to injured consumers. 2015 Consent Order, 2015-CFPB-0023.

15. Despite the Consent Order, PRA nevertheless continues to ignore the prohibitions of the FDCPA, and its unfair and unlawful debt collection practices persist to this day. In fact, the CFPB has received over 2,400 consumer complaints since it took action against PRA, with the bulk of consumer complaining that PRA barraged them with calls and ignored do-not-call directives.

16. In addition to those who complain to the government, there are thousands of others who lodge complaints on the internet about being bombarded with automated calls from PRA after requesting that the calls stop.

17. While ignoring do-not-call directives and barraging consumers with calls, PRA used an automated telephone dialing systems and/or an automated voice in violation of the TCPA.

18. Indeed, PRA's illegal calling campaigns resulted in an enormous exposure to liability, and PRA has found itself defending a veritable plethora of TCPA class actions, and hundreds on individual TCPA claims.

19. The PRA TCPA class actions were consolidated into a Multidistrict Litigation ("MDL"), and since then hundreds of individual claims have been transferred into the MDL. *See, In re: In re Portfolio Recovery Associates, LLC* Telephone Consumer Protection Act Litigation, Case No. 11-MD-2295-JAH-BGS, in the U.S. District Court for the Southern District of California. The PRA MDL was heavily litigated. After years of unsuccessfully defending the MDL, PRA ultimately PRA agreed to settle the TCPA class actions for $18 million.

## **PRA AND THE PLAINTIFFS**

20. The PRA TCPA class action settlement identified over 7.4 million consumers who were called in violation of the TCPA, and Plaintiffs were among those identified as members of the class. Like the other members of the class, Plaintiffs received automated calls from PRA during the class period of November 2, 2006 and August 31, 2014, as defined in the PRA TCPA class action settlement. Plaintiffs each timely opted out of the class action to pursue their individual claims as asserted herein.

21. Although it was years ago, Plaintiffs each specifically recall being bombarded with unwanted calls from PRA. True to its pattern of unlawful conduct,

PRA systematically ignored each of Plaintiffs' do-not-call directives, and barraged them with calls without their consent and over their objections. In fact, there was not a single instance in which PRA honored a do-not-call directive from any of the Plaintiffs.

22. Even after being told to stop calling, PRA bombarded Plaintiffs with calls on an almost daily basis, multiple times a day, for weeks and months on end. The calls began early in the mornings and persisted well into the evening hours. Plaintiffs estimate they sometimes received upwards of fifteen calls from PRA in a single day.

23. PRA's calls to Plaintiffs were particularly bothersome because they were automated. When Plaintiffs answered the calls, PRA sometimes used an automated voice, and Plaintiffs were forced to wait in silence for an available representative with whom they could speak. Other times Plaintiffs answered calls from PRA, and heard only silence and PRA's telephone system never transferred them to a live representative. Other times still, Plaintiffs answered and PRA's telephone system terminated the call. When Plaintiffs did not answer, PRA clogged their voicemails with blank and/or automated messages.

24. PRA added to Plaintiffs' frustration by calling from many different phone numbers, and by blocking the caller identification such that Plaintiffs would not know it was PRA calling. Plaintiffs sometimes blocked PRA's telephone number in an effort to stop the calls, only to find that PRA would start calling them from a different phone number.

25. Plaintiffs were often times met with rude and abusive representatives when they asked that the calls stop. PRA representatives typically openly and openly refused to honor Plaintiffs' do-not-call requests. Representatives sometimes insisted the calls would, and could, continue until such time as the debt was paid. Some representatives terminated the call when told to stop calling, other times

representatives ignored the request all together and became loud and aggressive attempting to bully Plaintiffs into making immediate payment.

26. Specifically, in or around 2011 and 2012, Plaintiff, Badran, received debt collection calls from PRA on her cellular telephone in an attempt to collect a debt. Ms. Badran advised PRA she was a victim of identity theft and instructed PRA to cease all communications. PRA ignored Badran and continued to harass her with automated calls.

28. In or around 2013, Plaintiff, Russell, began receiving automated calls from PRA on her cellular telephone in an attempt to collect a debt. Ms. Russell directed PRA to stop calling. PRA nonetheless continued to harass Ms. Russell with automated calls.

29. In or around 2012, Plaintiff, Desire Valdez began receiving automated calls from PRA in an attempt to collect a debt. Ms. Valdez told PRA representatives to stop calling. PRA nonetheless continued to harass Ms. Valdez with automated calls.

30. In or around 2012, Plaintiff Tamara Morris began receiving automated calls from PRA in an attempt to collect a debt. Ms. Morris told PRA representatives to stop calling. PRA nonetheless continued to harass Ms. Valdez with automated calls.

31. The calls from PRA intruded on Plaintiffs' right to be free from unwarranted invasions. By ignoring Plaintiffs' demands to stop calling, PRA caused Plaintiffs, and each of them, frustration, aggravation, and distress. The calls from PRA interfered with Plaintiffs' ability to use their cellular telephones in the manner in which they were intended, interrupted important calls, wasted their time, interfered with work days, disrupted them while driving, and disturbed quiet evenings and family time.

///

///

///

## COUNT I
## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227, ET. SEQ.

32. Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

33. PRA knowingly and/or willfully called Plaintiffs without their consent and or their objections.

34. Without prior consent, PRA placed calls to Plaintiffs using an automated telephone dialing system and/or an automated or prerecorded voice on their cellular telephones in violation of 47 U.S.C. §227(b)(1)(A)(iii).

35. Insofar as PRA knew it had no consent to call Plaintiffs on their cellular telephones, the calls were made in knowing and/or willful violation of the TCPA. As such, PRA should be subject to treble damages for each call pursuant to 47 U.S.C. §227(b)(3)(C).

36. When PRA called Plaintiffs, its telephone dialing system had the capacity to store randomly or sequentially generated telephone numbers, and randomly or sequentially dialed telephone numbers.

37. PRA's telephone system used an automated voice when it placed calls to Plaintiffs.

38. The calls from PRA to Plaintiffs were not placed for "emergency purposes" as defined by 47 U.S.C. §227(b)(1)(A)(i).

39. Plaintiffs are entitled to damages as a result of PRA's TCPA violations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants:

1. As a result of each call made in negligent violation of the TCPA, Plaintiffs, and each of them, are entitled to an award of $500.00 in statutory damages

per call, pursuant to 47 U.S.C. §227(b)(3)(B);

2. As a result of each call made in knowing and/or willful violation of the TCPA, Plaintiffs, and each of them, are entitled to an award of treble damages in an amount up to $1,500.00 per call, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C);

3. An Order from the Court directing PRA to implement effective policies and procedures to honor consumers' do-not-call directives;

4. An Order from the Court directing PRA to implement effective procedures to avoid violations of the TCPA; and

5. Reasonable attorneys' fees and costs pursuant to Cal. Civ. Code §1021.5; and

6. Such other and further relief as may be just and proper.

DATED: June 7, 2017  TAMMY HUSSIN

By: /s/ T*ammy Hussin*
Tammy Hussin, Esq.
Hussin Law
Attorney for Plaintiffs